SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cutter Mill Road, Suite 409
Great Neck, NY 11021
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@ spencersheehan.com*

LAW OFFICE OF JAMES CHUNG
James Chung
43-22 216th Street
Bayside, NY 11361
Tel: (718) 461-8808
Fax: (929) 381-1019
*jchung_77@msn.com*

United States District Court
Southern District of New York

| | |
|---|---|
| Timothy Lee, individually and on behalf of all others similarly situated, | 7:21-cv-00924 |
| Plaintiff, | |
| - against - | Complaint |
| The Kingsford Products Company, LLC, | |
| Defendant | |

Timothy Lee ("Plaintiff"), based on personal knowledge, information and belief, and investigation of counsel, alleges as follows:

1.    The Kingsford Products Company, LLC ("Kingsford" or "Defendant") engages in deceptive business practices in the marketing, advertising and promotion of its 100% Natural Hardwood Briquettes ("Product"), often described as "barbecue charcoals."

2.    Barbecuing is method of food preparation where food is cooked slowly at low temperatures over indirect heat.

3.      This American cultural pastime dates to the colonial era, when the colonists were introduced to this technique from the Native Americans, who had perfected this method.

4.      In fact, it has been claimed that the first Thanksgiving feast was actually a barbecue.

5.      The Native Americans and early colonists cooked their food using a form of hardwood charcoal ("lump charcoal"), created through slowly burning wood pieces in the absence of oxygen until all the natural chemicals, sap and moisture are removed.

6.      Several hundred years later, a competitor to lump charcoal emerged in the form of the briquette, commonly referred to as "barbecue charcoal," specifically designed to provide more efficient barbecuing to Americans.

7.      Henry Ford popularized briquettes, and they increased in usage alongside automobiles that took Americans to parts of the country they had never seen.

8.      Ford's earliest briquettes consisted of wood scraps – stumps, branches, sawdust, etc. – that were left over from the wood used in Ford automobiles.

9.      Though briquettes can be made with only natural ingredients, they typically contain additives like starch, limestone, sodium nitrate, and sodium tetraborate pentahydrate (borax).

10.     Starch is used as a binder to hold the numerous components together.

11.     Limestone is used to provide light-ash color to the briquettes.

12.     Sodium nitrate makes briquettes easier to light.

13.     Borax is a synthetic chemical used to release the identically shaped briquettes from their molds.

14.     A growing number of consumers prefer lump charcoal to briquettes because it does not contain fillers or additives, is more likely to be a natural product, burns hotter and lights faster than briquettes and produces a smaller amount of ash after burning out.

15.     The Product is marketed as "100% Natural Hardwood Briquets" which delivers a "Cleaner Burn."



16.     However, the representations are misleading because the Product is not (1) "100% Natural" nor (2) "100% Natural Hardwood."

17.     Consumers expect a "100% Natural" charcoal product to contain only substances derived from nature, without synthetic components and not be subjected to chemical processes which alters their character and type.

18.     The Product is not "100% Natural" because it contains synthetic ingredients such as borax.

19.     The Product is not "100% Natural Hardwood" because it contains wood scraps including between 3 and 8 percent sawdust, instead of only hardwood, which is the source for

3

lump charcoal.

20.     The front label contains a graphic of a green flame accompanied by the statement "Cleaner Burn*."

21.     The green flame and comparative claim give consumers the impression the Product is beneficial, or less harmful to the environment, compared to other fire sources such as propane gas and lump charcoal.

22.     However, this representation is misleading because it is insufficiently and inconspicuously qualified by an asterisk referring to small font on the bottom of the bag that notes these attributes are only when the Product is "compared to Kingsford Original Charcoal."



23.      Moreover, numerous studies have shown that briquettes like the Product produce higher levels of carbon dioxide than lump charcoal and propane and are thus more harmful to the environment and cannot be said to result in a "cleaner burn" than any similar fire source.

24.     Defendant's misrepresentation and omissions were motivated to induce Plaintiff and the Class to purchase the Product in reliance of the claims.

25.     As a result of Defendant's conduct and omissions, Plaintiff and the putative class

purchased the Product, which failed to conform as promised.

26.     They were deprived of the benefit of the bargain and suffered monetary loss.

27.     Plaintiff and the Class lack the ability to test or verify Defendant's claims at the point of sale. Consumers would not know the true nature of the labeling merely by reading the labels nor are they expected to know.

28.     Plaintiff and the Class relied on the representations and omissions in deciding to purchase the Product.

29.     The product is worth less than bargained for. Plaintiff and the Class paid a price premium for the Product.

30.      Plaintiff and the Class did not obtain the full value of the Product due to Defendant's misrepresentations and omissions.

## <u>JURISDICTION AND VENUE</u>

31.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

32.     The aggregate claims of all members of the proposed class exceed $5 million, exclusive of interest and costs, and there are more than 100 putative class members, and Plaintiff and Defendant are citizens of different states.

33.     This Court is the proper venue for this action because a substantial part of the events giving rise to the claim occurred in this District.

34.     Plaintiff and a substantial number of putative class members are residents of this District.

35.     This Court has personal jurisdiction over Defendant because it is authorized to do business and does business in New York, has marketed, advertised and made sales in New York,

and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

## **PARTIES**

36.      Plaintiff Timothy Lee is a citizen of Dutchess County, New York.

37.      Plaintiff purchased the Product on at least one occasion, at Home Depot, 80 Independent Way SE, Brewster, NY 10509 between January 27, 2020 and July 27, 2020

38.      Plaintiff purchased the product for personal and household use in reliance on the labeling, including "100% Natural," "100% Natural Hardwood" and "Cleaner Burn."  As a result of the representations made by Defendant, Plaintiff expected the product to conform to the descriptions.

39.      Had Plaintiff known the truth about the misrepresentations and omissions, he would not have purchased the Product.

40.      Instead, he would have purchased a competing product that is less expensive.

41.      Plaintiff cannot rely on the truthfulness of the Product in the future unless Defendant makes corrective changes.  Plaintiff may consider future purchases if Defendant engages in corrective labeling and advertising or modifies the Product's composition.

42.      Defendant The Kingsford Products Company LLC is a Delaware limited liability company with a principal place of business in Oakland, California, and upon information and belief, at least one member of defendant is not a citizen of this state.

43.      Defendant manufactures, markets, labels and sells its "100% Natural Hardwood Briquettes" for between $13 - $16 for a 12-pound bag, available at convenience, grocery, home improvement and other retail stores.

6

44.     Kingsford is the leading manufacturer of charcoal in the United States.

45.     The labeling and advertising were designed to induce consumers to purchase the Product.

## CLASS ALLEGATIONS

46.      Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and/or 23(b)(3) ("the Class").

47.     The proposed class consists of: All persons who purchased the Product in New York during the relevant statute of limitations.

48.     Plaintiff also seeks an injunctive relief class.

49.     The members of the class are so numerous that joinder is impracticable.

50.     Plaintiff's claims are typical of the claims of the entire class.

51.     Plaintiff will fairly and adequately represent and protect the interests of the other class members for purposes of Federal Rule of Civil Procedure 23(a)(4).

52.     Plaintiff has no interests antagonistic to those of other class members.

53.     Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in class action litigation.

54.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact exist as to all members of the class and predominate over any questions affecting only individual members of the class.

55.     Class certification under Federal Rule of Civil Procedure 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy.

56.     Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members

to seek redress for the wrongful conduct alleged.

57.     Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

58.     Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.

## COUNT I

## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §§ 349 & 350

59.      Plaintiff incorporates by reference all preceding paragraphs.

60.     Plaintiff brings this claim on behalf of himself and other members of the Class for violations of New York's Deceptive Acts or Practices Law, Gen. Bus. Law §§ 349 & 350.

61.     Defendant's business acts and practices and/or omissions constitute deceptive acts or practices under NY GBL §§ 349 & 350, enacted to protect the public from unconscionable, deceptive or unfair acts or practices in the conduct of any business.

62.     The practices of Defendant described throughout this Complaint were specifically directed to consumers.

63.     Defendant's actions impact the public at large because Plaintiff and members of the Class were injured in the same way as thousands of others purchasing the Product as a result of Defendant's deceptive conduct.

64.     By committing the acts alleged in this Complaint, Defendant materially misled Plaintiff and the Class into purchasing the Product, in part or in whole, due to an erroneous belief that the Product has qualities that it does not have.

65.     The representations are unfair, deceptive, and misleading.

66.     Defendant's claims materially misled Plaintiff and are likely in the future to mislead

reasonable consumers.

67.     Had Plaintiff and members of the Class known of the true facts about the Product, they would not have purchased the Product and/or paid substantially less for competing product.

68.     Defendant's violations proximately caused Plaintiff and other members of the Class to suffer actual damages in the form of, inter alia, monies spent to purchase the Product.

69.     Plaintiff and class members are entitled to recover such damages, together with equitable and declaratory relief, appropriate damages, including punitive damages, attorneys' fees and costs.

## COUNT II

### Breach of Express Warranty

70.     Plaintiff incorporates by reference all preceding paragraphs.

71.     Defendant made promises in the form of written warranties representing that the Product was "100% Natural" and "100% natural hardwood."

72.     Inherent in that promise is Defendant's representation that the Product does not contain substances that it did.

73.     Defendant further misrepresented that the Product burns cleaner than alternatives such as lump charcoal and propane.

74.     These representations became part of the bargain and were material to Plaintiff and the Class in the decision to purchase the Product.

75.     Plaintiff and the Class relied on Defendant's misrepresentation and justifiably acted in ignorance of the material facts omitted or concealed when they decided to purchase the Product.

76.     Plaintiff relied upon Defendant's expressed warranties regarding its specialized knowledge, expertise, experience, skills, and judgment to properly perform its duties in a manner

that would not present an unreasonable risk of harm or place an undue burden upon Plaintiff.

77.     Defendant breached the express warranty since the Product is not what it claims to be.

78.     As a direct and proximate result of Defendant's breach, Plaintiff and the Class were damaged in the amount to be proven at trial.

## COUNT III

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

79.     Plaintiff incorporates by reference all preceding paragraphs.

80.     At all times relevant hereto Defendant was under a duty imposed by law requiring that a manufacturer's and merchant's product be reasonably fit for the ordinary purposes for which the product is used, and that the product be acceptable in trade for the product description.

81.     This implied warranty of merchantability is part of the basis for the bargain between Defendant on the one hand, and Plaintiff and class members on the other.

82.     Notwithstanding the aforementioned duty, at the time of delivery, Defendant breached the implied warranty of merchantability in that it failed to perform as described and failed to conform to the standard described by Defendant in its marketing and representation.

83.     Defendant knew or should have known that selling such a Product to Plaintiff and class members constituted a breach of the implied warranty of merchantability.

84.     As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members bought the Product without knowledge of their non-conformance.

85.     As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members purchased the Product, which could not be used for

10

its intended purpose.

86.     As a direct and proximate result of Defendant' breach of the implied warranty of merchantability, Plaintiff and class members have suffered damages and did not receive the benefit of their bargain.

87.     Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

88.     Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

89.     Defendant was unjustly enriched by keeping the profits from sale of the Product.

90.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, plaintiff and class members have suffered loss.

<u>**COUNT IV**</u>

<u>**NEGLIGENT MISREPRESENTATION**</u>

91.     Plaintiff incorporates by reference all preceding paragraphs.

92.     Defendant, directly or through their agents and employees, made false representations, concealments, and omissions to Plaintiffs and members of the Class.

93.     Defendant has failed to fulfill their duties to disclose the material facts in making the representations to Plaintiff and members of the Class.

94.     The direct and proximate cause of this failure to disclose was Defendant's negligence and carelessness.

95.     Defendant knew or reasonably should have known that the representations were not true. Defendant made and intended the misrepresentations to induce the reliance of Plaintiff and

members of the Class.

96.     Plaintiff and members of the Class would have acted differently had they not been misled. They would not have paid money, paid less money or purchased an alternative product.

97.     Defendant has an obligation to correct the misinformation that was disseminated through their advertising of the Product. By not informing Plaintiffs and members of the Class, Defendant breached their duty. Defendant also profited financially as a result of this breach.

98.     Plaintiff and members of the Class relied upon these false representations and omissions by Defendant when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

99.     Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for Product, and any interest that would have been accrued on all those monies, the specific amount to be determined at trial.

100.     Defendant acted with intent to defraud, or with reckless or negligent disregard of the rights of Plaintiff and members of the Class.

101.     Plaintiff and members of the Class are entitled to punitive damages.

## COUNT V

## FRAUD

102.     Plaintiff incorporates by reference all preceding paragraphs.

103.     Defendant intentionally made materially false and misleading representations regarding the Product.

104.     Plaintiff and members of the Class were induced by, and relied on, Defendant's false and misleading packaging, representations and omissions and did not know at the time that

they were purchasing a product that did not consist of components or perform as claimed.

105.    Defendant knew or should have known of their false and misleading labeling, packaging and misrepresentations and omissions.

106.    Nevertheless, Defendant continued to promote and market the product in a deceptive and misleading manner to induce customers to purchase the Product.

107.    As a proximate result of Defendant's conduct, Plaintiff and members of the Class suffered damages in an amount to be determined at trial.

## COUNT VI

## UNJUST ENRICHMENT

108.    Plaintiff incorporates by reference all preceding paragraphs.

109.    Defendant received proceeds from their sale of the goods, which were purchased by Plaintiff and the Class for an amount far greater than the reasonable value because the Product did not conform to the description and did not perform as promised.

110.    Plaintiff and the Class reasonably believed that the Defendant's goods would function as advertised and warranted, and did not know, nor could have known, that the Product would not perform as promised at the time of purchase.

111.    Defendant knows of and appreciates the benefit conferred by Plaintiff and the Class and has retained the benefit notwithstanding their knowledge that the benefit is unjust.

112.    It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiff and the Class given that product was not what Defendant purported them to be.

113.    It would be unjust and inequitable for Defendant to retain the benefit, warranting disgorgement to Plaintiff and the Class of all monies paid for the product, and/or all monies paid

for which Plaintiffs and the Class did not receive benefit.

## Prayer for Relief

WHEREFORE, Plaintiff, individually and on behalf of all members of the Class, pray for judgment as follows:

A. Certifying the proposed Class as requested herein;

B. Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. Declaring that Defendant has committed the violations of law alleged herein;

D. Providing for any and all injunctive relief the Court deems appropriate;

E. Awarding statutory damages in the maximum amount for which the law provides;

F. Awarding monetary and statutory damages including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

G. Providing for any and all equitable monetary relief the Court deems appropriate;

H. Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I. Awarding Plaintiffs their reasonable costs and expenses of suit, including attorneys' fees;

J. Awarding pre- and post-judgment interest to the extent the law allows; and

K. For such further relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all claims so triable.

February 2, 2021  Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
Spencer Sheehan
60  Cutter Mill Road, Suite 409
Great Neck, NY 11021
Tel: (516) 260-7080
Fax:(516) 234-7800
*spencer@spencersheehan.com*

Law Office of James Chung
James Chung
43-22 216th Street
Bayside, NY 11361
Tel: (718) 461-8808
Fax: (929) 381-1019
*jchung_77@msn.com*

*Attorneys for Plaintiff*

7:21-cv-00924
United States District Court
Southern District of New York

Timothy Lee, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

The Kingsford Products Company, LLC,

Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
 60 Cutter Mill Rd Ste 409
 Great Neck NY 11021-3104
    Tel: (516) 268-7080
    Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 2, 2021

/s/ Spencer Sheehan
Spencer Sheehan